In the Matter of the Estate of ADOLPH HUBER, Deceased.

Surrogate's Court, Schenectady County, January 11, 1930.

*Werner H. Pigors* [*Frank Bearup* of counsel], for the petitioner.

*Edgar C. Oughetree* [*John W. Eckert* of counsel], for the respondent·

CAMPBELL, S. The important question involved on this motion is whether respondent, Carrie E. Davis, formerly Carrie E. Huber, was on September 2, 1918, the date of death of Adolph Huber, his lawful widow. If she was, she is entitled to administer his estate; if she was not his lawful widow at that time, she is not entitled to letters of administration.

From the record before this court it appears that respondent brought an action for an absolute divorce against Adolph Huber in 1913 on statutory grounds and that a hearing was held thereon before a Special Term of the Supreme Court in the city of Kingston, Ulster county, N. Y., on February 13, 1915. The defendant, Adolph Huber, did not appear either personally or by attorney and

no answer was interposed. Service of the summons was by publication.

Neither an interlocutory nor a final decree of divorce was filed or entered in the county clerk's office of Ulster county within the time prescribed by statute and neither of these important documents was on file on the date of death of the said Adolph Huber.

Notwithstanding this, respondent herein, Carrie E. Davis, formerly Carrie E. Huber. attempted to contract a lawful marriage with one Henry S. Davis at Stone Ridge, Ulster county, N. Y., on May 17, 1915.

The history of divorce in this State, as in other jurisdictions, has proven that such actions have been subjects of collusion, fraud, perjury and the like, and the Legislature in its wisdom has provided by statute what *must* be done before an absolute divorce becomes effective, legal and final.

In order to provide a period for investigation, reflection and reconsideration, during which time perjury, collusion and fraud may be discovered, and subsequently considered by the court, the statute specifically sets forth that a period of three months must elapse from the time of the filing and entry of the interlocutory decree and the final decree. During that period the defendant in this divorce action might have decided to contest the action or take some other legal steps. But up to the time of the death of Adolph Huber, neither the interlocutory nor the final decree had been filed or entered and I am compelled to hold as a matter of law that respondent was the lawful wife of Adolph Huber at the time of his death. It follows she survived him as his lawful widow and, therefore, was and is entitled now to administer his estate under the statutes governing such cases.

But counsel for the petitioner on this application contends that by reason of the *nunc pro tunc* order of April 29, 1921, both the interlocutory and final decrees were filed as of the proper times in 1915.

In considering this phase of the divorce proceeding, it must be borne in mind that nowhere in the papers presented to the learned justice of the Supreme Court on the application to file the decrees *nunc pro tunc* was the fact made known that Adolph Huber died in 1918. Had this fact been made known to the learned justice, I do not believe the *nunc pro tunc* order of April 29, 1921, would have been granted. That application was made on the theory that the signatures of the witnesses who testified for the plaintiff in the divorce action could not be obtained to sign their testimony after it had been transcribed by the stenographer and that was the reason for the delay.

It is well established in this and other States that death dissolves the marital relation, and upon that event happening the surviving spouse is at liberty to contract another lawful marriage. It is also well established in this State that actions for divorce are *in personam* and die with the death of either of the parties thereto.

Therefore, respondent herein was freed of the bonds of matrimony by the death of Adolph Huber but she was not freed from those bonds by the action for divorce which she brought against him because the necessary procedure was not completed during the lifetime of the said Adolph Huber.

I am constrained to hold, therefore, that respondent on the date of death of Adolph Huber was and now is his lawful widow and as such is entitled to letters of administration on his estate; that there was no lawful and valid divorce existing between respondent herein and the said Adolph Huber during the lifetime of the latter; that the action for divorce abated upon the death of the said Adolph Huber, defendant in said action, and that the *nunc pro tunc* order of April 29, 1921, was unwarranted, extrajudicial, null, void and ineffective. (*Matter of Crandall*, 196 N. Y. 127; *Byron* v. *Byron*, 134 App. Div. 320, at p. 322; *Grotsch* v. *Hassey*, 133 Misc. 373; *Townsend* v. *Townsend*, 100 N. Y. Supp. 464; *Thorne* v. *Thorne*, 210 App. Div. 55, 56; *Hunt* v. *Hunt*, 75 Misc. 209; *Bell* v. *Bell*, 181 U. S. 175, 179; *Ackerman* v. *Ackerman*, 200 N. Y. 73, 76.)

Accordingly, an order may be entered denying petitioner's motion herein and restoring the said respondent Carrie E. Davis to full power as administratrix of the estate of her deceased husband.