HELEN S. DURLACHER, Plaintiff, *v.* SIMON DURLACHER, Defendant.

Supreme Court, Special Term, New York County, February 19, 1940.

*Max D. Steuer,* for the plaintiff.

*Leonard M. Wallstein,* for the defendant, appearing specially to contest jurisdiction.

BERNSTEIN, J.   The plaintiff seeks an order, under section 1171-b of the Civil Practice Act, directing the clerk of the court to enter judgment in favor of the plaintiff and against the defendant in the sum of $833.33, representing one month's arrears of alimony due to the plaintiff under a judgment of separation between the parties entered herein on February 7, 1934.   At the date of the judgment both parties were residents of New York and the plaintiff claims that they still are such residents, but that the defendant, though in business in New York city, is presently sojourning at Lake Tahoe, Nev.   Because of the defendant's absence from the State, the order to show cause, upon which this application was initiated, directed the service of the moving papers herein upon him by mail, addressed to both his last known residence and his place of business in New York city and upon the attorneys who represented him in the action, and such service was effected in accordance with that direction.

The defendant appears specially on this motion to challenge the jurisdiction of the court to enter the money judgment upon the ground that the application of section 1171-b to the defendant and the construction of that section to authorize the kind of notice directed and given to the defendant are violative of the due process clauses of the United States Constitution (14th Amendt. § 1) and of the State Constitution (Art. 1, § 6).   In support of this contention, the defendant asserts that in January, 1939, he irrevocably abandoned his home and his business affiliations in New York and removed to and took up a *bona fide* residence and domicile in Reno, Nev., where he has since then remained and intends to remain on a permanent basis, and that the attorneys who represented him in the action were discharged from their professional duties on his behalf on the entry of the judgment and have never acted nor been authorized to act for him since that time.   For the purposes of passing upon the legal questions raised on the motion, these assertions must be accepted as true.

Section 1171-b was enacted by chapter 431 of the Laws of 1939 and became effective on September 1, 1939.   Its caption is: "Enforcement by execution of judgment or order in action for divorce or separation."   The text is: "Where the husband, in an action for divorce or separation, *makes default in paying any sum of*

*money as required by the judgment or order directing the payment thereof, the court may make an order directing the entry of judgment for the amount of such arrears,* together with ten dollars costs and disbursements. The application for such order shall be upon such notice to the husband as the court may direct. Such judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments. The relief herein provided is in addition to any and every other remedy to which the wife may be entitled under the law." (Italics by court.)

The defendant's claim of unconstitutionality follows this line of reasoning: (a) That since the defendant was not bodily within, or a resident of, the State when the statute was enacted or thereafter, the court could acquire no jurisdiction over him to direct the entry of a personal judgment against him without personal notice, and (b) that the notice provided for by the statute and given him under the order to show cause was not personal and was, therefore, insufficient to confer such jurisdiction. He argues that the jurisdiction of his person obtained when the original judgment of separation was rendered in 1934 does not supply a jurisdictional basis for the money judgment sought upon this application, since such money judgment was only authorized under a statute enacted in 1939. He further argues that to hold the statute constitutional it must be interpreted as applying only either prospectively to judgments entered after its enactment or to defendants who were subject to the sovereignty of the State at the time of its enactment or thereafter. Under either interpretation, says the defendant, the statute will not permit the entry of the judgment applied for here.

The fallacy of the defendant's contention lies in the fact that it interprets the statute as providing for the rendition of a new judgment when in fact its only purpose was to furnish a new means of effective enforcement of an old judgment. The statute extended no right to the plaintiff that she did not already have. It added nothing to the defendant's burden. The judgment entered in 1934 directed the payment of monthly alimony of $833.33, and that direction imposed a binding obligation on the defendant. It was not and could not be affected by his change of residence or by his absence from the jurisdiction. Prior to 1939 the statutory remedies for a failure to comply with such direction were sequestration and contempt proceedings. Section 1171-b added another statutory remedy, to wit, enforcement by execution. That that was its only purpose appears not only from the caption of the section, but from its last sentence.

The remedy thus provided by the statute was not even new in so far as it was applicable to unpaid alimony under a judgment. It

had been recognized as an existing remedy under such a judgment long before the enactment of the statute. In *Thayer* v. *Thayer* (145 App. Div. 268) the court said, in affirming an order for the entry of a judgment for unpaid alimony: " There is no doubt that this amount is due to plaintiff, and that it is in the nature of a judgment * * * which may be enforced by execution. (Code Civ. Proc. § 1240; *Miller* v. *Miller*, 7 Hun, 208.) Although it was said in the last cited case that ' No difficulty exists in the way of docketing such a judgment, nor in issuing execution upon it, from time to time, as the amounts recovered become due and payable,' yet there would seem to be a practical difficulty in the way without the interposition of a direction by the court. * * * That case [*Harris* v. *Elliott*, 163 N. Y. 269] is authority for the proposition that it is not necessary that a judgment should be presently payable in order to permit of its being docketed. In the case of a judgment for future alimony, however, it is not possible to docket a judgment at once for all the alimony that may become payable under the judgment, because it is impossible to foresee how long the payments are to continue. The only practicable method is to docket successive judgments as the instalments of alimony fall due. * * * it is entirely proper that application should be made to the court for an order directing the clerk to docket as a judgment any instalments of alimony which remain unpaid. Such an order is not the rendition of a new judgment for the amount, but merely a means of putting into practical effect the plaintiff's right to have her judgment put in such form that execution can be issued upon it."

In a later case, in which the right to enter such a judgment for unpaid temporary alimony was involved, the Appellate Division again referred with approval to the propriety of entering such judgments for unpaid permanent alimony in these words: " We find no authority of statute or decision for the entry of a judgment for unpaid installments of temporary alimony. Although permanent alimony unpaid under a final decree in a matrimonial action is in the nature of a judgment debt which may, upon direction of the court, be docketed as a judgment (Civ. Prac. Act, § 504; *Thayer* v. *Thayer*, 145 App. Div. 268), different principles apply to unpaid installments of temporary alimony. The reason for the distinction is said to be that authority to award temporary alimony (Civ. Prac. Act, § 1169) and the means for its enforcement (Civ. Prac. Act, §§ 1171, 1171-a, 1172) rest exclusively upon statutory provisions which are not to be extended by implication." (*Doncourt* v. *Doncourt*, 245 App. Div. 91; affd., 275 N. Y. 470.)

Indeed, in the light of those decisions, and the language of section 1171-b, it is quite apparent that the enactment of the section in

1939 had for its purpose, not the creation of a right to the entry of a money judgment for unpaid alimony *under a judgment* — a right which was already well recognized — but the extension of that right to the entry of such a money judgment for unpaid alimony *under an order*.

Furthermore, it is quite well settled that a final judgment does not terminate a matrimonial action as to alimony if there be a provision for such alimony in the judgment, as there is here. (*White* v. *White*, 224 App. Div. 355, 356.)

In that view of the force of the separation judgment entered in 1934, neither the defendant's absence from the State nor his change of residence has impaired the court's jurisdiction and he continues subject to the court's mandates. Before the enactment of the statute, notice of the application to enter judgment for unpaid permanent alimony was unnecessary. (*Thayer* v. *Thayer, supra.*) Under the statute the application is required to be made upon such notice as the court may direct. In the instant case the notice was not only given as the court directed, but it was effective to bring the defendant into court, even if only to contest its jurisdiction.

From the foregoing it is quite clear that the application of section 1171-b to the defendant does not violate his constitutional rights, even in the situation in which he has been presented here, and the motion is granted. Settle order.